PATRICIA N. T. KISHIDA, nka PATRICIA N. T. QUIACUSAN,
Plaintiff-Appellee, *v.* ALLAN K. KISHIDA, Defendant-Appellant

NO. 10469

(FC-D NO. 104739)

MARCH 21, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

AMENDED OPINION OF THE COURT BY BURNS, C.J.

Defendant Alan K. Kishida (Alan) appeals the family court's October 31, 1984 decision and order. We affirm in part and vacate in part.

The dispositive issue is whether Hawaii Revised Statutes (HRS) § 386-57(a) (1976) bars the family court from ordering Alan to use $8,270 of his $22,948.56 lump sum workers' compensation payment he received to pay his court-ordered child support arrearage. Our answer is no.

On March 22, 1978 the family court ordered Alan to pay to plaintiff Patricia N.T. Kishida, now known as Patricia N. T. Quiacusan (Patricia), commencing April 1, 1978, child support of $50 per month per child for three children.

On October 11, 1983 the family court ordered First Insurance to deduct $150 per month from Alan's workers' compensation monthly payment due and apply it to Alan's current child support obligation.

On March 7, 1984 the family court decided that Alan owed Patricia $8,270 past due child support through October 31, 1983 and ordered First Insurance to deduct an additional $50 per month from Alan's

monthly workers' compensation payment due to be applied to Alan's child support arrearage.

On August 6, 1984 First Insurance notified the family court that the parties had agreed to settle Alan's workers' compensation claim for $25,000.

On July 31, 1984 Patricia moved for, and on September 14, 1984 Alan was served with, an order to show cause (OSC) why he should not be required to pay his child support arrearage and to give security for the payment of not-yet-due child support.[1]

---

[1]HRS §§ 571-52(a) and (d) (Supp. 1984) provides:

Assignment by court order of future wages for payments of support.  (a) Whenever any person has been ordered to pay an allowance for the support, maintenance, or education of a minor child, or for the support and maintenance of a spouse or former spouse, and fails or refuses to obey or perform the order and has been adjudged guilty of contempt of court for such failure or refusal, the court may make an order which shall operate as an assignment by the person to the clerk of the court where the order is entered, for the benefit of the minor child or spouse, of such amounts at such times as may be specified in the order, from the salary, wages, or other income due or to become due in the future to such person from his employer or successor employers, until further order of the court. The order of assignment shall be effective immediately after service upon an employer of a true copy of the order, which service may be effected by certified or registered mail or by personal delivery. Thereafter, the employer shall for each pay period withhold from the salary, wages, or other income due to the person from the employer, and not required to be withheld by any other provision of federal or state law, and transmit to the clerk of the court as set forth in the order, as much as may remain payable to the person for such pay period up to the amount specified in the order of assignment as being payable during the same period. The person ordered to pay shall inform the court immediately of any change which would affect the order of assignment or the disbursement thereof. Compliance by an employer with the order of assignment shall operate as a discharge of the employer's liability to the employee for that portion of the employee's earnings withheld and transmitted to the clerk of court, whether or not the employer has withheld the correct amount. The term "employer" as used in this section includes the United States government, the State and any political subdivision thereof.

*   *   *

(d) Notwithstanding any other provision of law, the provisions of this section shall be applicable to all moneys payable to any obligor including moneys payable as a pension or as an annuity or retirement or disability or death or other benefit, or as a return of contributions and interest thereon from the United States government, or from the State or other political subdivision thereof, or from any retirement, disability, or annuity system established by any of them pursuant to statute.

Under HRS §§ 571-52(a) and (d), Patricia could have asked the family court to order First Insurance to pay $8,270 of Alan's $22,948.56 benefit to her before it paid it to Alan. She did not. Instead, she asked the family court to order Alan to pay her $8,270 from his $22,948.56 workers' compensation payment after he received it.

The actual cash received by Alan from First Insurance was $22,948.56. He testified that he received it "between the 9th and the 16th of September." The family court found that he received it after he was served the September 14, 1984 OSC. On October 24, 1984 the family court issued an oral temporary restraining order restraining Alan from spending or disposing of $8,120 of the $22,948.56.

On October 31, 1984 the family court issued a decision and order. Focusing on the fact that in the July 19, 1984 Compromise and Settlement of Alan's workers' compensation claim Alan had agreed to notify the family court "in writing of the termination of his weekly benefits and of his receipt of a lump sum compromise[,]" the family court decided that Alan had thereby impliedly waived his right to argue pursuant to HRS § 386-57(a) that he could not be forced to use any of his lump sum workers' compensation payment to pay his child support arrearage. It also decided that his negotiation of First Insurance's check without prior notification to the court was a fraud on the court and contempt of the court. It ordered Alan to use the $8,120 covered by the temporary restraining order to pay his arrearage and suspended "imposition of sentence" for the contempt on the condition of such payment.

On November 20, 1984 Alan filed a motion for reconsideration of the October 31, 1984 decision and order.

On December 24, 1984 the family court issued a written order confirming its October 24, 1984 oral order restraining Alan "from spending or otherwise disposing of $8,120.00 from his worker's [sic] compensation settlement and award of $25,000.00 until the further order of the Court."

On January 14, 1985 the family court denied Alan's motion for reconsideration. The order noted that the October 31, 1984 order had found Alan to be in civil contempt.

In this appeal, Patricia agrees with Alan that the lower court erred in deciding that Alan committed a fraud on the court, that Alan was in civil contempt of the court, and that Alan waived his rights under HRS § 386-57(a), which provides:

> Legal status of right to compensation and compensation payments. (a) The right to compensation under this chapter shall not be assignable, and the right to compensation and compensation payments received shall be exempt from the reach of creditors.

Other courts have interpreted similar statutes not to exempt workers' compensation awards from claims based on the award of

past-due child support. *See* Annot., 31 A.L.R. 3d 532, § 6 (1970). These courts decided that a literal application of the statutory language would contravene legislative intent. We agree.

Our decision in this case is also based on the rationale of *Pollick v. Pollick,* 52 Haw. 357, 477 P.2d 620 (1970). There, the divorce court's divorce decree required Mr. Pollick to keep his ex-wife and children as beneficiaries of his vested but unmatured state retirement fund. He failed to do so. Upon his death the fund was paid to his wife as administratix of his estate.

HRS § 88-91 (1976) provides:

> Exemption from taxation and execution. The right of a person to a pension, an annuity or a retirement allowance, to the return of contributions, the pension, annuity or retirement allowance itself, any optional benefit or death benefit, any other right accrued or accruing to any person under this part and the moneys in the various funds created under this part are exempted from any tax of the State and, except as in section 88-92[2] provided, shall not be subject to execution, garnishment or any other process and shall be unassignable except as in this part specifically provided. [Footnote added.]

Notwithstanding HRS § 88-91, the Hawaii Supreme Court ordered the administratix to pay the fund to the ex-wife and children. According to *Pollick,* § 88-91 prohibits "those forms of judicial process, such as execution and garnishment, which act *directly* upon funds derived from the Retirement System. [It] was not meant to constrain the power of a divorce court to issue an equitable decree personally directing a party before it to carry out particular acts." 52 Haw. at 360, 477 P.2d at 622 (emphasis in original).

Similarly, we hold that HRS § 386-57(a) does not constrain the family court from ordering Alan to use a part of the lump sum workers' compensation payment he received to pay his court-ordered child support arrearage.

Alan notes that HRS § 88-91 exempts the "allowance itself" but HRS § 386-57(a) exempts the "compensation payments received." He

---

[2]HRS § 88-92 permits the sequestration and garnishment of the right to pension or retirement funds of a person who is reasonably believed to have embezzled, stolen, or otherwise unlawfully taken, received, retained, or failed properly to account for any property or funds of the state, the county, or their agencies.

considers that to be a substantial difference. We do not. Both statutes equally protect the payments received.

Alan also notes that the relevant wording of HRS § 88-91 is "shall not be subject to execution, garnishment or any other process and shall be unassignable except" but the relevant wording of HRS § 386-57(a) is "shall not be assignable, and . . . shall be exempt from the reach of creditors." He considers that to be a substantial difference. We do not. The only way a creditor can reach a workers' compensation payment is by "process." Therefore, both statutes equally protect the payments received from the reach of creditors.

Alan further notes that the divorce court merely ordered Mr. Pollick to keep his ex-wife and child as beneficiaries of his state retirement fund but the family court ordered Alan to apply a portion of his workers' compensation payment to pay his child support arrearage. He considers that to be a substantial difference. We do not. The family court had no jurisdiction over Alan's worker's compensation payment. It only had jurisdiction over Alan. Thus, its order applied to him and not to his money.

Moreover, in Pollick the Hawaii Supreme Court exercised as much control over Mr. Pollick's estate's retirement fund as the family court exercised over Alan's worker's compensation payment. The Pollick opinion begins as follows: "This case involves the right to the possession of $18,320.32, representing the retirement benefits of the decedent, . . . ." *Pollick,* 52 Haw. at 357, 477 P.2d at 621. Subsequently, the opinion enforced "the equitable rights of the [ex-wife] and the children to the moneys in question . . . ." *Pollick,* 52 Haw. at 363, 477 P.2d at 623.

Accordingly, we affirm that portion of the family court's October 31, 1984 decision ordering Alan to use $8,270 of his lump sum workers' compensation payment received to pay his court-ordered child support arrearage. In all other respects we vacate the family court's October 31, 1984 decision and order.

*Richard F. Dvonch* on the briefs for appellant.

*Rosemary McShane,* Deputy Corporation Counsel, on the brief for appellee.